ROSE BROTTMAN, Respondent, v. JOHN SCHELA, Appellant.

(202 N. W. 132.)

**Contracts — good will — evidence held not to establish to sale of good will of business conducted in building sold; agreement not to engage in grocery business held void as being in restraint of trade.**

Where one who owned a building, wherein he conducted a grocery business, leased the building and sold the grocery business to another, with an agreement after the expiration of the lease to repurchase the same, and where, before the expiration of the lease, the other party purchased the building upon a written agreement and upon the alleged oral agreement that the vendor would not engage in the grocery business on the West Side of the city of Devils Lake, and where no mention is made in the written contract or in the oral agreement of the good will of the grocery business as the subject of sale, and the same can be established only by indirection or implication through

---

Note.—Does good will pass with transfer of business without specific mention, see annotation in 5 L.R.A.(N.S.) 1077; 12 R. C. L. 985; 2 R. C. L. Supp. 1524; 4 R. C. L. Supp. 781.

the price obtained for the building and the value thereof, it is held, for reasons stated in the opinion, that the record fails to establish the sale of the good will of the grocery business and that, hence, the alleged oral contract, being in restraint of trade, was void.

Opinion filed December 31, 1924.

Contracts, 13 C. J. § 410 p. 467 n. 5; § 418 p. 473 n. 73; § 420 p. 477 n. 89; § 423 p. 480 n. 8.  Good Will, 28 C. J. § 8 p. 738 n. 75; § 24 p. 747 n. 65.

In District Court, Ramsey County, *Buttz, J.*

Action to enjoin defendant from engaging in the grocery business.

Defendant has appealed from the judgment and demands a trial de novo.

Judgment reversed.

*Flynn, Traynor & Traynor,* for appellant.

"The power of equity to reform written instruments is an extraordinary one, and its exercise must be carefully guarded and granted only in a clear case."  34 Cyc. 904.

"The instrument sought to be corrected must fail to express the real agreement or transaction because of *mistake common to both parties,* or because of mistake on one side and fraud or inequitable conduct on the other.  A mere misunderstanding of the facts is not sufficient ground for asking reformation".  Id. p. 907.

"A unilateral mistake is not a ground for reformation.  An instrument which agrees with the intention of one party, although under mistake as to the other, cannot be reformed.  Before equity will reform a written instrument, it must appear that there was a valid agreement sufficiently expressing the real intent of the parties, and that the written instrument failed to express such intent, and that *this failure* was due to mutual mistake".  Id. p. 915.

"Good will is the possibility that old customers will resort to the old place for the purpose of trade".  Macfadden v. Jenkins, 40 N. D. 443.

"That the remedy by injunction is summary, peculiar, and extraordinary, and lies only to prevent general and irreparable mischief; and that the power to grant an injunction should be exercised with the greatest caution, and only in very clear cases, and when there are

circumstances to bring the cause under some recognized head of equity jurisdiction". Strobeck v. McWilliams, 42 N. D. 31.

"If these bills of sale are to be construed to contain such covenants as is claimed by appellants, *it would be necessary for further construction as to how long they were to continue, and when they would end whether in a week, a month, or a year—or whether there would be a perpetual injunction on the right of the seller to establish a like business,* with a right of solicitation." MacMartin v. Stevens (Wash.) 79 Pac. 1099.

"Good will, like a trademark, is but an incident to, *and can have no existence apart from the business in which it had its origin."* Mayer Fertilizer Co. v. Virginia-Carolina Chemical Co. 35 App. D. C. 426; 28 C. J. 731.

"The good will of a business is property, tangible only as an incident of, or as connected with, *a going concern."* Johnson v. Bruzck (Minn.) 172 N. W. 700.

*Cuthbert & Adamson,* for respondent.

"At common law contracts entered into on Sunday were as valid as those made on any other day." 37 Cyc. 557, 558.

"It is well settled that a contract entered into on Sunday does not violate a statute forbidding 'labor' on that day and hence *is not void."* 37 Cyc. 558. Johnson v. Brown, 13 Kan. 529; Kaufman v. Hamm, 30 Mo. 387; Glouer v. Cheatham, 19 Mo. App. 656; More v. Clymer, 12 Mo. App. 11; Fitzgerald v. Andrews, 15 Neb. 52, 17 N. W. 370; Horacck v. Keebler, 5 Neb. 355; Merritt v. Earle, 29 N. Y. 115, 86 Am. Dec. 292; Bloom v. Richards, 2 Ohio St. 387; Raines v. Watson, 2 W. Va. 371.

"It is thought that the sale is void because made on Sunday. It is sufficient answer to say that the statute of 1861 was not designed to prohibit the making of contracts, but the keeping open of a house or place of business on Sunday; that the statute has not prescribed as a penalty for a violation of the act that the contract made on Sunday shall be void." More v. Murdock, 26 Cal. 526; Territory v. Davenport, 17 N. M. 214, 41 L.R.A.(N.S.) 407 and note.

*The validity of contracts made on Sunday depends upon the statutes of the states where they are made.* Contracts were not included among those acts which were rendered void by the English statute

pertaining to judicial proceedings on Sunday. At the common law contracts made on that day were not for that reason void. Davis v. Barger, 57 Ind. 54; Adams v. Gay, 19 Vt. 358; Tucker v. West, 29 Ark. 386."

The general rule is that a contract which is completed on a secular day is not void because negotiations therefor have been conducted on Sunday. Note to Burr v. Nivison, 20 Ann. Cas. 37.

The objection that a contract is invalid for having been made on Sunday is not available where there was no meeting of the minds on that day. Greathead v. Walton, 40 Conn. 235; Stackpole v. Symonds, 23 N. H. 229; Merrill v. Downs, 41 N. H. 72.

The mere fact that a contract grows out of a transaction which took place on Sunday will not render it void. Tyler v. Waddingham, 58 Conn. 375, 20 Atl. 335, 8 L.R.A. 657; King v. Fleming, 72 Ill. 21, 22 Am. Rep. 131.

A contract is not void because some of its terms were fixed on Sunday, or because most of the business out of which the consideration for the contract arose was transacted on that day. Tuckerman v. Hinkley, 9 Allen (Mass.) 452; Adams v. Gay, 19 Vt. 358.

"The consideration for contracts is presumed to have been lawful. Illegality is never presumed, it must be *alleged* and *proved*." St. Louis etc. Ry. Co. v. Fire Asso. 18 S. W. 43; Dahl v. Montana Copper Co. 10 S. C. 97; White River Lumber Co. v. S. W. Imp. Asso. 18 S. W. 1055.

"Parties who have contracted with such foreign corporation as a corporation, and received and retained the benefits of such contract, cannot, in an action by such corporation, based thereon, raise the question of noncompliance with the terms of said sections." Washburn Mill Co. v. Bartlett, 3 N. D. 139.

A contract in restraint of trade is valid. Mapes v. Metcalf, 10 N. D. 60; Tode v. Gross, 127 N. Y. 480; Diamond Watch Co. v. Roeber, 106 N. Y. 473.

"Good will is the possibility that old customers will resort to the old place for the purpose of trade." Macfadden v. Jenkins, 40 N. D. 443.

"It is said: 'The good will of the business is property which the law protects and for injuries to which damages may be recovered.'" Maxwell v. Sherman, 172 Ala. 626, 55 So. 520.

"The good will of an established business is incorporeal property which may be mortgaged, sold, or leased in connection with the business, but it cannot be sold by judicial decree or otherwise, unless it be in connection with the sale of the business on which it depends." 40 N. D. 443; 20 Cyc. 1277.

"The general rule that contracts in restraint of trade are void has its exceptions, one of which is that, for the protection of the good will of an established business, the owner of the same may make a sale thereof with such business, and, as an inducement to the purchaser to buy, part with his liberty to engage in the same business for such limited time and with such limited territory as may be reasonably necessary to protect the purchaser in the enjoyment of such business." Ann. Cas. 1917A, 1011.

## Statement.

BRONSON, Ch. J. This is an action to reform a contract and to enjoin defendant from engaging in the grocery business at a certain location in Devils Lake, North Dakota. . Defendant has appealed from the judgment and demands a trial de novo in this court.

The facts necessary to be stated are:—The defendant owned two lots and a store building situated on what is known as the West Side in the city of Devils Lake, N. D. There for about one year and two months he had conducted a grocery business. Plaintiff, previous to the grocery business so maintained by defendant, apparently had worked for several years for an antecedent party who had likewise conducted a grocery business in the building concerned. On February 25th, 1922, defendant leased to plaintiff the two lots and building and also the fixtures in the building, for a term of two years and for a rental of $60 per month. In the lease there was also an agreement by plaintiff to purchase the groceries and merchandise at regular wholesale prices and at the end of two years defendant agreed to repurchase the stock of goods then on hand not exceeding $400.00. On the back of this lease there was the further agreement that the plaintiff would not put in any grocery business along certain named streets on the West Side in the vicinity of where the store is located. Pursuant to this leasing and sale they operated the store in defendant's

building until about the month of November, 1923.   Then plaintiff initiated arrangements to build a store building on adjacent lots (two lots intervening) and there to conduct a grocery business when the lease with defendant expired.   Some officers of a wholesale grocery company, viewing these proceedings, made representations to the parties that it would be inadvisable to have two grocery stores in the neighborhood.   These officers proceeded to bring the parties together and as a result of their efforts arrangements were made for the sale of the building owned by defendant to plaintiff.   Pursuant to plaintiff's evidence, on a certain Sunday, defendant agreed that if plaintiff bought the store he would not put in a store on the West Side.   Pursuant to the testimony of one Crawford, salesman of the wholesale grocery company, defendant stated to the manager of the company that if plaintiff bought the building he would not put in a store.   Likewise, one Johnson, manager of the grocery company, testified that defendant stated that if plaintiff bought the building he would not start a store, and if he did not, he would start a store; that the defendant did not state where he would start this store nor how long he would refrain from starting a store.   Defendant's testimony in this regard is to the effect that his statements to Johnson were that he would not go into the store business just then if he sold the building.   He denied making any agreement with plaintiff not to put a store in on the West Side.   On Monday following, namely, on Nov. 19th, 1923, at a local bank in Devils Lake, N. D. a contract was made between the parties whereby defendant agreed to sell to plaintiff the two lots upon which the store building was situated for a consideration of $3000, including the fixtures and furniture situated in the building.   This contract, signed by the parties, contained no reference to any agreement by defendant not to again engage in business.   Later, in April, 1924, defendant, in his home, immediately across the street from this building, made preparations to again start in business by putting in shelving and making arrangements to secure certain goods and merchandise.   Thereupon, this action was instituted.   Some evidence was offered to the effect that the building and fixtures, including the lots, were worth $2500 and that the balance of $500 represented the good will of the grocery business that had been maintained at this location for some considerable period of time.   Defendant contested this testimony by

evidence to the effect that the building and lots and furniture were worth the total amount of $3000. The trial court made findings to the effect that the parties on Nov. 19th, 1923, made an agreement for a good and sufficient consideration that defendant would not engage in a line of business similar to and in competition with the business of plaintiff on the West Side of the city of Devils Lake; that the physical property purchased by plaintiff was not worth to exceed $2500 and that the difference, namely, $500, represented the good will and the promise of defendant not to engage in the grocery business again on the West Side in such city. As conclusions, the court ordered an injunction of restraint to issue. In a memorandum opinion the trial court states that the real understanding between the parties, pursuant to the oral agreement, was that defendant should not again engage in business, namely, start another grocery store in the West Side in that city, and that the territory known as the West Side was well understood to refer to a distinct territory in the city of Devils Lake. Further, that defendant possessed a good will in connection with the business that he previously maintained at the location, and that by the oral agreement he distinctly sold this good will to plaintiff and, therefore, he ought now to be restrained from detracting or from impairing the good will so sold to plaintiff.

## Opinion.

The oral contract, sought to be enforced, is in restraint of trade and is void unless it falls within the recognized exception permitting reasonable restraints of trade.

The statute provides that one who sells the good will of a business may agree with a buyer to refrain from carrying on a similar business within a special county, city or part thereof, so long as the buyer, or any person deriving title to the good will, carries on a like business therein. Comp. Laws 1913, § 5929.

The prime question involved in this appeal is whether the oral contract, if made as alleged, involved and covered the good will of the business, namely, the grocery business, on the West Side in the city of Devils Lake. From the admitted facts contained in the record it well appears that defendant owned the building and had conducted a gro-

cery business therein for a period of about one year and two months. He leased the building to plaintiff for two years and sold to him the grocery business with an agreement to repurchase the same at the expiration of two years. In addition, plaintiff agreed, in this lease and sale of the store, not to start any grocery store on certain streets on the West Side of Devils Lake. It is evident that plaintiff either considered that this agreement was invalid, or intended, regardless, to start his grocery business in his own building and in a new location. Further, it appears from the record that plaintiff apparently had theretofore been working in this building for a party who conducted a store prior to its operation by defendant. Accordingly, after the execution of this lease and the sale of the grocery business, defendant retained the ownership of the building and the right to repurchase the grocery business. Defendant became the owner of the grocery business and conducted the same in the building mentioned. In the face of these facts, the parties in November, 1923, before the expiration of the lease, made a written agreement to sell the building owned by defendant. In accordance with the oral contract, as found by the trial court to have been on the day before this written agreement was executed, defendant agreed not to engage in the grocery business on the West Side. The record wholly fails to show that there was any sale of the good will of this grocery business made, in terms, by defendant to plaintiff. The sale or transfer of a good will can be created upon the facts only through implying that the physical property sold was of less value than the consideration paid and that therefore the difference must represent good will and that this good will so represented by such value was a part of the consideration in the transfer of the building. Upon the facts in this case, we are of the opinion that the plaintiff has failed to establish any sale of the good will of a grocery business. At the time of the sale of the building defendant, as heretofore stated, did not own the grocery business. He simply possessed the right, at the end of four months, to purchase the grocery business. It is true that then he might have become possessed of the good will of such grocery business. It may be true, further, that there was a so-termed good will existing in connection with this location, but plaintiff purchased the location. Already he had the grocery business. Further, when the sale was made, plaintiff had initiated the starting of

another grocery business; then he was seeking to lessen competition by the elimination of defendant in the business of grocery man at the old location in his own building; Good Will was not mentioned, specifically, in the sale of the building, nor so far as the evidence shows, in any of the oral talks had between the parties. Furthermore, the testimony of plaintiff, concerning the oral talks, does not extend further than to the effect that defendant stated that if plaintiff bought the building he would not start a store on the West Side. The other witnesses wholly fail to establish that defendant agreed otherwise than that he would not start a store if plaintiff bought the building. We are of the opinion that the alleged oral contract asserted in the record, being in restraint of trade, is insufficient to establish or show, in connection with the sale of the building, a sale of the good will of the grocery business by defendant to plaintiff as conducted in such building. Siegel v. Marcus, 18 N. D. 214, 20 L.R.A.(N.S.) 769, 119 N. W. 358; Mapes v. Metcalf, 10 N. D. 601, 88 N.W. 713; Prescott v. Bidwell, 18 S. D. 64, 99 N. W. 93; 13 C. J. 473, 477, 480; 3 Williston, Contr. §§ 1636, 1637. In our opinion the judgment should be reversed and the action dismissed. It is so ordered.

JOHNSON, NUESSLE, and BIRDZELL, JJ., concur.

CHRISTIANSON, J. (dissenting). Section 5929, Comp. Laws 1913, provides: "One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or a part thereof, so long as the buyer or any person deriving title to the good will from him carries on a like business therein." The sole question on this appeal is whether there was a contract between the plaintiff and the defendant, such as is authorized by this statute. The trial court found that there was, i. e., the trial court found that the defendant had sold the good will of a certain grocery business to the plaintiff and for a consideration had agreed with the purchaser (the plaintiff) that he (defendant) would refrain from carrying on a similar business within a specified portion of the city of Devils Lake so long as the plaintiff was engaged in such business there. Both the plaintiff and defendant appeared in person and testified orally before the trial court. And,—as I construe the evidence,—

52 N. D.—10.

there was a square conflict between the parties themselves on the pivotal question in controversy.  According to the testimony of the plaintiff he purchased not only certain property or a certain business, but the good will of such business, and he paid a substantial sum for such good will, and the defendant, as a part of that transaction, agreed to refrain from carrying on a grocery business within a specified portion of the city of Devils Lake, so long as the plaintiff was engaged in such business at the place then occupied by him within such portion of the city.  While defendant admitted that the plaintiff had purchased the property from him he denied that he had sold the good will of any business or that he had received any consideration therefor, or that he had agreed to refrain from engaging in a similar business within a specified portion of the city of Devils Lake, or at all.  The trial court who saw the parties and heard their respective stories, arrived at the conclusion that the plaintiff's version of the transaction was the correct one.  And, in my opinion, the record presented on this appeal does not justify this court in overturning the findings made by the trial court.